CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
July 07, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **TREMANE D. CARTHEN,** | ) |
| Plaintiff, | ) Case No. 7:22-cv-00201 |
| | ) |
| v. | ) |
| | ) **By: Michael F. Urbanski** |
| **LT. LAFAVE, et al.,** | ) **Senior United States District Judge** |
| Defendants. | ) |

## MEMORANDUM OPINION

Tremane D. Carthen, a federal inmate proceeding pro se, filed this civil action against eighteen correctional officers and two doctors at USP Lee in Pennington Gap, Virginia, where he was previously incarcerated. Carthen seeks to recover damages for alleged violations of the Eighth Amendment to the United States Constitution, pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Carthen alleges that the correctional officers used excessive force against him while he was confined in ambulatory restraints and that the doctors falsely reported that he voiced no complaints of pain or other injuries.

The court previously dismissed the case without prejudice for failure to keep the court advised of his address. Carthen has since filed a motion to reopen the case, along with a notice of change of address. ECF No. 31. The court will grant the motion to reopen for the limited purpose of reviewing the operative complaint pursuant to 28 U.S.C. § 1915A(a). For the following reasons, the court concludes that a Bivens remedy is unavailable for Carthen's claims. Accordingly, the amended complaint is **DISMISSED** for failure to state a claim upon which relief may be granted.

## I. Background

In his amended complaint, Carthen alleges that the named correctional officers "used a riot shield as a weapon to ram [his] head against the wall while he was being restrained in ambulatory restraints that were so tight that chain marks were dug into his waistline and [shackles] scarred his ankles." Am. Compl, ECF No. 26, at 5. He alleges that he spent at least sixteen hours in the restraints and that he still has scars from the incident. Id. He further alleges that the prison doctors falsified government records by indicating that he made no complaints of pain or other injuries during their medical assessments. Id.; see also id. at 2 ("During the restraint checks, Dr. Bowman and Dr. Parker ignored the plaintiff's complaints about being injured and the restraints [being] too tight.").

The court liberally construes the amended complaint to assert claims of excessive force and inadequate medical care in violation of the Eighth Amendment. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) ("Claims that prison officials failed to provide adequate medical care to an inmate, like excessive force claims, sound in the Eighth Amendment."). Carthen seeks to recover "66 million dollars from each defendant individually." Am. Compl. at 3.

## II. Standard of Review

The court is required to review a complaint in a civil action in which an inmate seeks redress from an employee or agent of a governmental entity. 28 U.S.C. § 1915A(a). The court must "dismiss a complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

2

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. Discussion

"Claims for money damages against federal officials and employees who have committed constitutional violations are known as Bivens claims, after the Supreme Court's decision in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)." Johnson v. Terry, 119 F.4th 840, 846–47 (11th Cir. 2024). Based on recent Supreme Court precedent, including the Court's decision in Goldey v. Fields, 606 U.S. ___, ___S. Ct. ___, 2025 WL 1787625 (June 30, 2025), the court concludes that a Bivens remedy is unavailable for the Eighth Amendment claims asserted in Carthen's amended complaint.

The Constitution "does not expressly provide for money damages for constitutional wrongs." Quinones-Pimentel v. Cannon, 85 F.4th 63, 68 (1st Cir. 2023). Likewise, no federal statute authorizes plaintiffs to bring claims for damages against federal officials based on alleged constitutional violations. Although 42 U.S.C. § 1983 authorizes plaintiffs to bring such claims against state officials, "there is no statutory counterpart to sue federal officials." Mays v. Smith, 70 F.4th 198, 202 (4th Cir. 2023).

In Bivens, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). The Court held "that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." Hernandez v. Mesa, 589 U.S. 93, 99 (2020). Although the Court "acknowledged that the Fourth Amendment does not provide for money damages 'in so many words,'" the Court "held that it

3

could authorize a remedy under general principles of federal jurisdiction." Ziglar v. Abbasi, 582 U.S. 120, 131 (2017) (quoting Bivens, 403 U.S. at 396).

In the decade following Bivens, the Supreme Court recognized an implied action for damages for constitutional violations by federal officials two more times. In Davis v. Passman, 442 U.S. 228 (1979), the Court held that the Due Process Clause of the Fifth Amendment provided a damages remedy for an administrative assistant who alleged that a Congressman fired her because she was a woman. In Carlson v. Green, 446 U.S. 14 (1980), the Court held that the Eighth Amendment provided a damages remedy for the estate of a prisoner who died due to the alleged failure of federal prison officials to adequately treat the prisoner's asthma. "These three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." Ziglar, 582 U.S. at 131.

After those decisions, "the Supreme Court changed course and started to chisel away at the Bivens doctrine." Sargeant v. Barfield, 87 F.4th 358, 363 (7th Cir. 2023). In the more than four decades since Carlson, the Supreme Court has repeatedly "declined . . . to imply a similar cause of action for other alleged constitutional violations." Egbert v. Boule, 596 U.S. 482, 486 (2022) (collecting cases). "Those many post-1980 Bivens 'cases have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts.'" Goldey, 2025 WL 1787625, at *1 (quoting Egbert, 596 U.S. at 486).

In determining whether a Bivens remedy is available in a particular case, a court must first decide "whether the case presents a new Bivens context—i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." Egbert, 596 U.S. at 492 (internal quotation marks and brackets omitted). "The Supreme Court has instructed not only that 'new context' must be understood broadly but also that a new context may arise if even one

4

distinguishing fact has the potential to implicate separation-of-power considerations." Tate v. Harmon, 54 F.4th 839, 846 (4th Cir. 2022) (citing Egbert, 596 U.S. at 492). Examples of factors that would support finding a new context include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Ziglar, 582 U.S. at 140. Although the Supreme Court has recognized that "[s]ome differences . . . will be so trivial that they will not suffice to create a new Bivens context," id. at 149, "[t]he Court has made clear that . . . a radical difference is not required," Tun-Cos v. Perrotte, 922 F.3d 514, 523 (4th Cir. 2019).

If the court "finds that a claim presents a 'new context' different from the three Bivens cases, it must 'proceed to the second step and ask whether there are any special factors that counsel hesitation about granting an extension' of Bivens." Bulger v. Hurwitz, 62 F.4th 127, 137 (4th Cir. 2023) (quoting Hernandez, 589 U.S. at 103). This inquiry "must focus on 'separation-of-powers principles' and requires courts to ask whether judicial intrusion into a given field is appropriate." Id. (quoting Hernandez, 589 U.S. at 102). As the Supreme Court reiterated in Egbert:

> If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, the courts must refrain from creating it. Even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy. Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case, no Bivens action may lie.

Egbert, 596 U.S. at 491–92 (internal quotation marks, citations, and brackets omitted). For instance, if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the court cannot second-guess that calibration by superimposing a Bivens remedy." Id. at 498. "That is true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" Id. (quoting Bush v. Lucas, 462 U.S. 367, 372 (1983)).

With this background in mind, the court turns to Carthen's claims for alleged violations of the Eighth Amendment.

### A. Excessive Force

Carthen's claim of excessive force is barred by the Supreme Court's recent decision in Goldey v. Fields. In that case, an inmate sued several prison officials at USP Lee in federal court for damages, claiming that certain officials used excessive force against him in violation of the Eighth Amendment. Goldey, 2025 WL 1787625, at *1. The Court determined that the case presented a new Bivens context and that special factors counseled against recognizing an implied Bivens action for an Eighth Amendment claim of excessive force. Id. at *2.

> To begin with, Congress has actively legislated in the area of prison litigation but has not enacted a statutory cause of action for money damages. See Ziglar, 582 U.S. at 148–49. In addition, extending Bivens to allow an Eighth Amendment claim for excessive force could have negative systemic consequences for prison officials and the "inordinately difficult undertaking" of running a prison. Turner v. Safley, 482 U.S. 78, 84–85 (1987). Moreover, "an alternative remedial structure" already exists for aggrieved federal prisoners. Ziglar, 582 U.S. at 137; see Correctional Services Corp. v. Malesko, 534 U.S. 61, 74 (2001). The existence of such alternative remedial procedures counsels against allowing Bivens suits even if such "procedures are 'not as effective as an individual damages remedy.'" Egbert, 596 U.S. at 498.

Id. Accordingly, Carthen's claim of excessive force against the named correctional officers must be dismissed because a Bivens remedy is unavailable for such claim.

**B.      Inadequate Medical Care**

To the extent that the amended complaint attempts to state a claim of inadequate medical care in violation of the Eighth Amendment, the claim fails for the same reason. Although Carlson also involved a claim of inadequate medical treatment, this case is "meaningfully different" from Carlson and therefore presents "a new Bivens context." Egbert, 596 U.S. at 492 (internal quotation marks and brackets omitted); see also Bulger, 62 F.4th at 138 (noting that "the Supreme Court has made clear that courts should not interpret Carlson to apply outside the precise context at issue in that case" and that "even claims challenging the adequacy of medical care may involve the same 'right . . . and mechanism of jury' as in Carlson but still present 'different' contexts") (quoting Ziglar, 582 U.S. at 138). First, the case is distinguishable from a factual standpoint. See Quinones-Pimentel, 85 F.4th at 70 (noting that "the relevant analysis involves a factual comparison" and that the facts "cannot be viewed generally") (citing Egbert, 596 U.S. at 495; Mays, 70 F.4th at 204; Tun-Cos, 922 F.3d at 524). In Carlson, a prisoner with chronic severe asthma died after federal prison officials allegedly kept him in a grossly inadequate medical facility against the advice of doctors, failed to give him competent care for eight hours after he suffered an asthma attack, administered contraindicated drugs that made the attack more severe, attempted to use a respirator known to be inoperative that further impeded his breathing, and unduly delayed transferring him to a hospital. Carlson, 446 U.S. at 16 n.1. Here, Carthen alleges that two prison doctors ignored his complaints of pain and unspecified physical injuries resulting from the application of restraints and other uses of force. While the court does not discount the pain and discomfort that Carthen allegedly experienced at USP Lee, his allegations "differ

7

markedly from a prisoner dying after an asthma attack where his asthma was not properly treated." Anderson v. Fuson, No. 23-5342, 2024 WL 1697766, at *3 (6th Cir. Feb. 1, 2024) (concluding that an inmate's claim of deliberate indifference presented a new Bivens context where the inmate alleged that "officers failed to conduct a medical examination when his restraints were removed and that he suffered significant injuries to his waist area and lasting anxiety" from the use of force) (internal quotation marks omitted); see also Johnson, 119 F.4th at 859 ("The severity, type, and treatment of Johnson's [non-lethal physical injuries] were different from those of the plaintiff in Carlson. Those differences make this a new context . . . .").

Additionally, the Supreme Court has "explained that a new context arises when there are 'potential special factors that previous Bivens cases did not consider.'" Egbert, 596 U.S. at 492 (quoting Ziglar, 582 U.S. at 140). One of those special factors is the existence of alternative remedial mechanisms available to inmates in the custody of the Bureau of Prisons (BOP), such as "grievances filed through the BOP's Administrative Remedy Program (ARP)." Malesko, 534 U.S. at 74. "The fact that Carlson did not consider the existence of alternative remedies under the framework explained in Egbert renders [the plaintiff's] claim different from the one in Carlson." Johnson, 119 F.4th at 858 (noting that "alternative remedies existed for prisoners in Johnson's position besides bringing a Bivens action, namely submission of a grievance form through the BOP administrative remedy program"); see also Logsdon v. United States Marshal Serv., 91 F.4th 1352, 1360 (10th Cir. 2024) (explaining that the fact that Bivens, Davis, and Carlson did not consider the alternative remedy afforded by the Department of Justice's Office of the Inspector General investigation procedure was "dispositive," since "the Supreme Court

8

has said that a departure from the Bivens precedents may be justified by 'the presence of potential special factors that previous Bivens cases did not consider'") (quoting Ziglar, 582 U.S. at 140).

For these reasons, the court concludes that there are meaningful differences between this case and Carlson, and thus that Carthen's claim of inadequate medical care presents a new context. Additionally, for the same reasons outlined in Goldey, special factors advise against recognizing a Bivens cause of action in this context. As previously noted, "an alternative remedial structure' already exists for aggrieved federal prisoners." Goldey, 2025 WL 1787625, at *2 (quoting Ziglar, 582 U.S. at 137); see also Bulger, 62 F.4th at 140 (concluding that the existence of the BOP's Administrative Remedy Program counseled against extending Bivens to encompass Eighth Amendment claims of failure to protect and intervene). Additionally, "Congress has actively legislated in the area of prisoner litigation but has not enacted a statutory cause of action for money damages." Goldey, 2025 WL 1787625, at *2 (citing Ziglar, 582 U.S. at 148–49). Approximately fifteen years after Carlson was decided, Congress enacted the Prison Litigation Reform Act (PLRA), which "was designed to limit litigation brought by prisoners, and remove the federal district courts from the business of supervising the day-to-day operations of prisons." Bulger, 62 F.4th at 141 (internal quotation marks and citations omitted). The PLRA "does not provide for a standalone damages remedy against federal jailers, a silence that speaks volumes and counsels strongly against judicial usurpation of the legislative function to create one." Mays, 70 F.4th at 206 (internal quotation marks and citations omitted). "[B]ecause Congress has expressed a desire to prevent courts from interfering with BOP decisions and has been conspicuously silent about creating a remedy for prisoners to obtain damages from individual officers, the existence of the ARP and PLRA counsel hesitation in extending Bivens" to Carthen's

9

claims. Bulger, 62 F.4th at 141. Consequently, the court concludes that a Bivens remedy is not available in this case.

### IV. Conclusion

For the foregoing reasons, the court will grant Carthen's motion to reopen the case, ECF No. 31, for purposes of reviewing the operative complaint under 28 U.S.C. § 1915A(a). Because the complaint fails to state a claim upon which relief may be granted under Bivens, it will be dismissed pursuant to § 1915A(b)(1). An appropriate order will be entered.

Entered: July 2, 2025

Michael F. Urbanski
U.S. District Judge
2025.07.02 17:20:54
-04'00'

Michael F. Urbanski
Senior United States District Judge